IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIOGEN INC. and BIOGEN MA INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 22-1190 (GBW) |
| ) | |
| SANDOZ INC. and ) | ▮▮▮▮▮▮▮▮▮ |
| POLPHARMA BIOLOGICS S.A., ) | |
| ) | |
| Defendants. ) | REDACTED - PUBLIC VERSION |

**LETTER FROM KAREN JACOBS TO THE HONORABLE GREGORY B. WILLIAMS REGARDING DISCOVERY DISPUTES TO BE HEARD AT THE FEBRUARY 22, 2023 HEARING (ISSUES 1 AND 2)**

OF COUNSEL:

Eric J. Marandett
Anita M.C. Spieth
Sophie F. Wang
Jennie D. Wilusz
Max A. Jacobs
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack Blumenfeld (#1014)
Karen Jacobs (#2881)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com
dfahnestock@morrisnichols.com

*Attorneys for Plaintiffs*
*Biogen Inc. and Biogen MA Inc.*

February 17, 2023

Dear Judge Williams,

Biogen respectfully requests that Defendants' letter request (D.I. 123) seeking to compel Biogen to produce privileged information and a fifth day of 30(b)(6) testimony be denied.

**1. The Biogen Presentations Contain Confidential Privileged Communications.**

    **A. The Parties' Expedited Discovery Efforts**

In October 2022, the parties stipulated to a scheduling order for expedited discovery and briefing of Biogen's Motion for a Preliminary Injunction. D.I. 20. Pursuant to that Order, on October 5, Sandoz served Biogen with **96** document requests. Ex. A (Defs. Doc. Reqs.). Biogen objected to the sheer volume of the Requests, as well as the burden imposed, particularly in light of the short turnaround time (five weeks total). Ex. B (Biogen Obj.). Nevertheless, given the urgency of the preliminary injunction ("PI") proceedings, Biogen expedited production of responsive documents. Biogen started producing documents to Defendants on a rolling basis on October 20. To date, Biogen has made 26 productions comprising more than 147,600 documents (and totaling over 2.8 million pages). Biogen has produced *50 times* more documents than Defendants, who have combined produced only 2,817 documents (half of which are simply the Defendants' aBLA).

In its efforts to produce comprehensive documents on an expedited basis, Biogen inadvertently produced certain privileged (or partially privileged) documents,



[2] Biogen also prepared a privilege log at Defendants' request. Ex. G (privilege log).

The negotiated Protective Order expressly permits such clawbacks. Part IV of the protective order allows the parties to claw back inadvertently-produced privileged material and precludes arguments of waiver based on inadvertent production. Ex. H (protective order) at 20-21.[3] This provision provides the parties reassurance that – despite expedited proceeding – privileged information will remain protected. Despite Biogen's adherence to the parties' clawback procedure, Defendants demand production of the privileged presentations. As explained below and by Biogen's in-house counsel, the redacted slides contain legal advice and should be protected.

    **B. The Presentations Reflect Attorney-Client Privileged Legal Advice**

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure." *Teleglobe Comm'cns Corp. v. BCE, Inc.*, 493 F.3d 345, 360 (3d Cir. 2007).

---

[1] Biogen will submit unredacted versions of the documents for *in camera* review upon request.

[2] [redacted]

[3] The negotiated protective order has not yet been filed, but the parties do not dispute that the agreed-upon clawback provision is operative. Indeed, Sandoz has similarly clawed back privileged material. *See* Ex. I (Sandoz clawback email).

The privilege "applies to any . . . (1) [] communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *Id.* at 359 (quotations omitted). As such, "communications between corporate clients and their attorneys are indeed privileged." *Id.* at 360. This rule applies to in-house counsel as well. *See id.* at 369.

The redacted material is privileged.



Ex. C ¶ 7. Biogen redacted

Involvement of "other internal executives" who prepared other parts of the presentation or received the presentation does not undermine the attorney-client privilege. *Idenix Pharm., Inc. v. Gilead Scis., Inc.*, 195 F. Supp. 3d 639, 643, 645 (D. Del. 2016). In fact, courts routinely protect slides that provide legal advice about intellectual property coverage, where the material is "based at least partly on communications with counsel." *Idenix*, 195 F. Supp. 3d at 645 (slides containing legal advice about "HCV Patent Situation" were privileged); *see also AbbVie Inc. v. Boehringer Ingelheim*, 2018 WL 2995677, at *2, *4-5 (D. Del. June 14, 2018) (slides discussing "patent strategy," "patentability," and "timeline for execution of patent strategy" were privileged, despite "mix of business and legal concerns"). Therefore, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. That businesspeople may rely on legal advice in making business decisions does not abrogate the privilege nor render it inoperable.

Defendants' waiver argument is unavailing. Waiver is a high bar. "Waiver, generally, must be clear and intentional." *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 478 (D. Del. 2012). To determine whether inadvertent disclosure of privileged information results in waiver, the Court considers, among other factors, "the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production," and "any delay and measures taken to rectify the disclosure." *Id.* Defendants do not dispute that the disclosure was inadvertent, and that Biogen acted expeditiously to identify and claw back privileged materials. As explained above, Biogen acted reasonably in reviewing and producing a large volume of material in a short time frame. The present dispute involves just two of the more than 147,600 documents Biogen has produced to date. *Royal Mile Co. v. UPMC*, No. 2:10-cv-01609-JFC, 2013 WL 12349724, at *6-7 (W.D. Pa. Apr. 9, 2013) (finding privilege not waived in part because inadvertent disclosures were "relatively insignificant numerically, comprising less than .05% of the entire document production").

---

[4] Even the cases cited by Defendants support Biogen's privilege claim. *See Idenix*, 195 F. Supp. 3d at 645, (numerous PowerPoint slides were properly redacted for privilege). In *FTC v. AbbVie, Inc.*, No. 14-5151, 2015 WL 8623076, at *11 (E.D. Pa. Dec. 14, 2015), the Court denied the privilege claim, where the party claiming privilege "[did] not provide any additional information to help the court understand counsel's role."

The fact that Biogen did *not* claw back an entirely different, unrelated document is similarly not grounds for waiver. *See* Ex. N (Spieth Decl.). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In short, there is no evidence that Biogen distributed these confidential and privileged presentations externally, delayed asserting the privilege, or otherwise waived the privilege. *Bayliss v. N.J. State Police*, 622 F. App'x 182, 186 (3d Cir. 2015) (privilege not waived where "disclosure was inadvertent, and the State took reasonable steps in preventing and rectifying the disclosure").

**2.    Biogen Should Not Be Compelled to Re-Produce Its Corporate Witness.**

Defendants have taken a collective 22.45 hours over four days of 30(b)(6) testimony to date. Defendants' belated demand for another 5-hour deposition of Biogen's 30(b)(6) witness, Dan O'Connell, on Topics that were already covered during his original full-day deposition, is merely an attempt to get a second bite at the apple at this stage of the proceedings—over a month after O'Connell's January 6 deposition, but now with Biogen's opening PI brief and expert declarations in hand, and after Biogen's experts have been deposed. Defendants have been aware since at least January 6 of Biogen's position that no further deposition is warranted. Yet they waited until weeks *after* Biogen filed its opening papers to seek a *fifth* deposition of Biogen at this late stage. This gamesmanship should be rejected.

Under Rule 26, the Court "must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). *See also* Fed. R. Civ. P. 30 (notes of adv. comm.); *see also* Fed. R. Civ. P. 30(a)(2)(A)(ii) (leave required to re-depose a witness).

As a preliminary matter, Defendants' approach to Rule 30(b)(6) depositions was overly broad and improper. *See* Ex. J (Defs.' Dep. Notice of 32 Topics); Ex. O (Biogen's Dep. Notice of 13 Topics); Ex. K (Biogen Obj.). The parties negotiated extensively to attempt to narrow the Topics, but many remained improper. Ex. L (Emails Regarding Scope). While standing on its objections, Biogen extensively prepared four corporate witnesses. Because many of the Topics involved facts from almost 20 years ago, Biogen even enlisted a former employee (Dr. Subramanyam) to testify on certain Topics. Mr. O'Connell, Biogen's Global Multiple Sclerosis (MS) Franchise Lead, was designated for Topics 1-3, 5, 9-10, 15-19, 22-24, 26, and 30-31—as limited by Biogen's objections and the parties' negotiations. O'Connell testified extensively for a full, 7-hour day concerning each of the designated topics. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He further explained he met with counsel, reviewed numerous documents, and further conferred with Biogen employees to supplement his own knowledge to

prepare for his deposition. *See, e.g., id.* at 24:19-23, 26:20-27-8, 45:17-22, 46:10-17. This is consistent with how Defendants' own 30(b)(6) witnesses prepared for their depositions and testified. *See, e.g.*, Ex. P (Staikos Dep. Tr.) at 15:21-24:7, 282:4-5; Ex. Q (Delo Dep. Tr.) at 13:19-26:5, 41:14-18, 42:15-21, 63:12-17, 96:4-5, 211:9-10, 238:11, 250:19-20.

The Court should reject Defendants' attempt to re-depose O'Connell on Topics 1-2, 15-16, 19, 23-24, and 26. D.I. 123 at 4. Defendants have already deposed Biogen for four days, and cannot meet their burden to show they are entitled to seek cumulative, duplicative, or "better" testimony from O'Connell on these topics, many of which were extensively covered during his deposition. *See State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235-36 (E.D. Pa. 2008) (denying motion to compel additional 30(b)(6) testimony because party had ample opportunity to gather information at two prior depositions and because "allowing for serial depositions . . . provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last"). For example, for Topics 1-2 (rates and terms of agreements), Defendants assert that O'Connell was "unprepared to address numerous contractual terms" because he did not "have it memorized." D.I. 123 at 4; Ex. M at 122:23-123:17. But "a Rule 30(b)(6) deposition should not be a memory contest," and "questioning a witness about voluminous pages of contractual terms is neither an appropriate nor an efficient avenue of discovery." *Wilmington Tr., Nat'l Ass'n v. Samcom 48 (DE) LLC*, No. 22-CV-2720 (RPK) (RLM), 2022 WL 17977499, at *2, 5 (E.D.N.Y. Dec. 28, 2022). Indeed, O'Connell reviewed numerous agreements and testified extensively about those agreements. *See* Ex. M at 46:10-24, 59:6-105:4.

Likewise, O'Connell was adequately prepared to answer questions on the other Topics, including by reliance on documents when necessary for specific numbers and terms. Having served overly broad topics without any granularity, Defendants can hardly complain that the witness was not prepared to testify with great granularity on every particular figure and issue. *See Suomen Colorize Oy v. Verizon Servs. Corp.*, C.A. No. 12-715-CJB, 2013 WL 5675516, at *6 (D. Del. Oct. 15, 2013) ("[F]ailure to provide perfect responses to every single question does not necessarily reflect a lack of preparation[.]"). For example, while Topic 19 only makes vague references to "due diligence" and "market analyses" regarding Biogen's purchase of Elan's interest in Tysabri®, Defendants unreasonably complain that O'Connell had "no knowledge of evaluation of goodwill" —a specific, individual accounting asset noted in Biogen's 10-K filing—associated with the 2013 Elan agreement. D.I. 123 at 4. Moreover, at least Topics 1, 2, and 19 seek testimony regarding expired agreements formed over ten to twenty years ago. Beyond the agreements themselves and associated correspondence—which have been produced—procuring further testimony would be unduly burdensome and unlikely to result in any further information due to the passage of time since the negotiation of these expired agreements. *See Russo v. Aerojet Rocketdyne, Inc.*, MDL 875, 2020 WL 4530703, at *7 n.13 (E.D. Pa. Aug. 5, 2020) ("When deciding a motion requesting additional Rule 30(b)(6) testimony, courts have considered the impact of the passage of time and its effects on the ability of a party to produce the requested information."); *Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 103 (2d Cir. 2013) (further 30(b)(6) depositions unduly burdensome where events occurred over fifteen years prior). At base, Defendants do not and cannot point to any information that O'Connell allegedly could not provide that is necessary to its PI opposition and cannot be obtained by other means – which Biogen has been willing to provide (and has provided).

For all these reasons, the Court should deny Defendants' request for a further 30(b)(6) deposition.

Respectfully,

*/s/ Karen Jacobs*

Karen Jacobs (#2881)

KJ/bac
Attachments

cc: Clerk of the Court (via hand delivery; w/attachments)
　　　All Counsel of Record (via electronic mail; w/attachments)