IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIOGEN INC. and BIOGEN MA INC., <br><br> Plaintiffs, <br><br> v. <br><br> SANDOZ INC. and POLPHARMA BIOLOGICS S.A., <br><br> Defendants. | C.A. No. 22-1190-GBW |

## MEMORANDUM ORDER

Plaintiffs Biogen Inc. and Biogen MA Inc. (collectively, "Biogen" or "Plaintiffs") filed their Second Amended Complaint (D.I. 98) (the "Operative Complaint") against Defendants Sandoz Inc. ("Sandoz") and Polpharma Biologics S.A. ("Polpharma") (collectively, "Defendants") to "halt Sandoz's and Polpharma's [(purported)] past, current, and future intended infringement of Biogen's rights pursuant to the patent laws of the United States." D.I. 98 ¶ 2; *see Biogen Inc. v. Sandoz Inc.*, No. CV 22-1190-GBW, 2023 WL 7130655, at *1-2 (D. Del. June 29, 2023).

Sandoz filed its "Answer and Affirmative Defenses to the Second Amended Complaint" ("Sandoz's Operative Answer"), in which it raised "Patent Exhaustion" and "License" as affirmative defenses. D.I. 153 at 1 (first quote), 57 (second quote and third quote). Polpharma filed its "Answer and Affirmative Defenses to the Second Amended Complaint", in which it raised "Patent Exhaustion" and "License" as affirmative defenses. D.I. 314 at 1 (first quote), 58 (second quote), 59 (third quote).

Pending before the Court is Defendant Sandoz Inc.'s Motion to Re-Designate Its Affirmative Defenses of License and Patent Exhaustion as Counterclaims, or in the Alternative,

for Leave to Amend Sandoz Inc.'s Answer, Affirmative Defenses, and Amended Counterclaims to Second Amended Complaint (D.I. 518) ("Sandoz's Motion"), which has been fully briefed (D.I. 519; D.I. 529; D.I. 530). For the following reasons, the Court denies Sandoz's Motion. Since the Court was able to resolve Sandoz's Motion without oral argument, the Court also denies-as-moot the parties' request for a teleconference (D.I. 533).

I. BACKGROUND

Sandoz "move[d] . . ., pursuant to Federal Rules of Civil Procedure 8(c)(2), 15(a)(2), and 16(b)(4), and District of Delaware Local Rule 15.1," to "re-designate its affirmative defenses of license and patent exhaustion as counterclaims, or in the alternative, for leave to amend its Answer, Affirmative Defenses and Amended Counterclaims to Second Amended Complaint." D.I. 518 at 1; *see* D.I. 519 at 1-2 ("Sandoz . . . is seeking to redesignate its affirmative defenses as counterclaims for declaratory relief. . . . In the alternative, Sandoz moves to amend its counterclaims to add declaratory judgment causes of action for license, exhaustion, and estoppel."); *see also* D.I. 518-3 (Sandoz's proposed re-designated Answer, Affirmative Defenses and Amended Counterclaims to Second Amended Complaint).

Sandoz contends that its primary request "to redesignate its affirmative defenses as counterclaims for declaratory relief . . . . is squarely within Rule 8(c)(2)." D.I. 519 at 1 (citing *Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651 (D.N.J. 2010)).

Sandoz contends that its alternative request "to amend its counterclaims to add declaratory judgment causes of action for license, exhaustion, and estoppel" is supported by "good cause." D.I. 519 at 2.

## II.  LEGAL STANDARDS

### A.  Rule 8(c)(2) of the Federal Rules of Civil Procedure

"Pursuant to the Federal Rules of Civil Procedure, civil actions are initiated by a complaint and the responsive pleading is an answer, counterclaim, or motion to dismiss." *Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 529 (3d Cir. 2009). Federal Rule of Civil Procedure "Rule 13 [] provides that crossclaims and counterclaims must proceed via pleadings[.]" *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 243 (3d Cir. 2021).

Pursuant to Federal Rule of Civil Procedure 8(c)(2), "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires,[1] treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2); *see Reiter v. Cooper*, 507 U.S. 258, 263 (1993). "Rule 8(c)(2) generally favors defendants by construing responsive pleadings liberally to maximize the defendant's available legal theories." *Roche*, 583 F.3d at 840.

### B.  Rule 15(a)(2) of the Federal Rules of Civil Procedure

"Federal Rule of Civil Procedure 15(a)(2) provides that a district court should 'freely give leave [to amend] when justice so requires.'" *Talley v. Wetzel*, 15 F.4th 275, 286 n.6 (3d Cir. 2021) (alterations in original). "Despite this liberal standard, leave to amend may be denied when there is undue delay, bad faith, dilatory motive, prejudice, [or] futility." *Id.* (quotation marks omitted); *see LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 291 (3d Cir. 2021). "Amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." 15 F.4th at 286 n.6 (quotation marks omitted). "When assessing futility, the [d]istrict

---

[1] In this context, "[t]he phrase 'if justice requires' is not well defined." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 840 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011).

[c]ourt applies the same standard of legal sufficiency as [it] applies under Rule 12(b)(6)." *Id.* (quotation marks omitted).

"If a motion to amend . . . is filed after the deadline set for amendments under a scheduling order, the moving party must also satisfy Rule 16(b)(4) of the Federal Rules of Civil Procedure." *W. R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. CV 20-1098-GBW, 2023 WL 6200280, at *4 (D. Del. Sept. 22, 2023); *see Truinject Corp v. Galderma S.A.*, No. CV 19-00592-GBW, 2023 WL 5993170, at *1 (D. Del. Sept. 15, 2023). "The Rule 16(b)(4) standard does not allow 'an inability to timely amend a pleading within the scheduling order deadline [to] excuse[ ] a party from exercising diligence in seeking leave to amend outside of the deadline.'" *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, No. CV 19-1727-RGA, 2022 WL 11761898, at *3 (D. Del. Oct. 20, 2022) (alterations in original) (quoting *NRT Tech. Corp. v. Everi Holdings Inc.*, No. CV 19-804-MN-SRF, 2022 WL 354291 (D. Del. Jan. 11, 2022)). "If a movant meets its burden under Rule 16(b)(4) to show that good cause exists, the court may then consider whether it should grant leave to amend under Rule 15(a)(2)." *iCeutica Pty Ltd v. Novitium Pharma LLC*, No. CV 18-599-CFC, 2019 WL 4604029, at *1 (D. Del. Sept. 23, 2019).

**C.     Rule 16(b)(4) of the Federal Rules of Civil Procedure**

"Under Rule 16, '[a] schedule may be modified only for good cause and with the judge's consent.'" *Pers. Audio, LLC v. Google LLC*, No. CV 17-1751-CFC, 2023 WL 3582681, at *2 (D. Del. May 22, 2023) (alteration in original) (quoting Fed. R. Civ. P. 16(b)(4)). "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Id.* (quoting *Synygy, Inc. v. ZS Assocs., Inc.*, No. CIV.A. 07-3536, 2015 WL 4578807 (E.D. Pa. July 30, 2015)). "If [a] party has not been diligent, the inquiry ends." *State Farm Mut. Auto. Ins. Co. v. Amazon.com, Inc.*, No. 22-cv-1447-CJB, 2024 WL 4145022, at *2 (D. Del. Sep. 11, 2024). "If the moving party can establish diligence, other considerations pertinent to the good cause

4

inquiry come into play, including the importance of the new information, the difficulty of locating the new information, any gamesmanship that is evident from the untimely disclosure, and the potential prejudice to the opposing party that would result from permitting the belated amendment." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, No. CV 18-366-WCB, 2020 WL 3047989, at *2 (D. Del. June 8, 2020) (collecting cases).

"A party seeking leave to modify a court's scheduling order under Rule 16(b)(4) has the burden of showing 'good cause.'" *Chervon (HK) Ltd. v. One World Techs., Inc.*, No. CV 19-1293-GBW, D.I. 516 at 6 (D. Del. Feb. 5, 2025) (quoting *Bos. Sci. Corp. v. Nevro Corp.*, No. 16-cv-1163-CFC, 2020 WL 5531561 (D. Del. Sep. 15, 2020)).

### III. DISCUSSION

For the reasons stated below, the Court denies Sandoz's Motion.

### A. Sandoz Has Failed to Demonstrate that Rule 8(c)(2) is Applicable

The parties dispute whether Sandoz is entitled, under Federal Rule of Civil Procedure 8(c)(2), to "redesignate its affirmative defenses as counterclaims for declaratory relief." D.I. 519 at 1.[2] Under Rule 8(c)(2), "[i]f a party mistakenly designates . . . a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated." Fed. R. Civ. P. 8(c)(2).

Biogen contends that "Sandoz's motion to redesignate fails because the untimely counterclaims are not a 'mistake.'" D.I. 529 at 2. Biogen emphasizes that Rule 8(c)(2), by its own plain language, is limited to scenarios where "a party **mistakenly** designates" a counterclaim as a

---

[2] A "genuine affirmative defense has been defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *LG.Philips LCD Co. v. Tatung Co.*, 243 F.R.D. 133, 137 (D. Del. 2007) (alteration in original) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337 (2d Cir. 2003)).

5

defense. *Id.* Sandoz does not dispute the absence of a mistake.[3] Instead, Sandoz responds that "Biogen is incorrect that redesignation under Rule 8(c)(2) is only proper in the event of a true taxonomical mistake." D.I. 530 at 2 (internal quotation marks omitted). Sandoz represents that, "[i]n *Rocheux International v. U.S. Merchants Financial Group, Inc.,* the court permitted defendant to re-designate its affirmative defenses that did not expand on the subject of the plaintiff's complaint and defendant's answer sixteen months after the close of fact discovery." *Id.* (citing *Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 662-64 (D.N.J. 2010)).

As explained below, the Court is not convinced that *Rocheux* adequately supports Sandoz's contention.[4] In *Rocheux*, the court addressed defendants' "request to redesignate certain affirmative defenses as counterclaims pursuant to Federal Rule of Civil Procedure 8(c)(2)." *Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc.*, 741 F. Supp. 2d 651, 660 (D.N.J. 2010). Specifically, "[t]he question before the [*Rocheux*] [c]ourt . . . [was] whether [d]efendants' proposed modification redresses a simple mistaken designation, for which Rule 8(c)(2) provides the appropriate standard for relief, or whether [d]efendants' modification presents a new claim, for which leave to amend is governed by Federal Rule of Civil Procedure 15(a)(2)." *Id.*

---

[3] *Cf. Progressive Sterilization, LLC v. Turbett Surgical LLC*, No. CV 19-627-CFC, 2020 WL 3071951, at *2 (D. Del. June 10, 2020) ("As the [c]ourt noted in *Hardy*, '[i]n an adversary system, in which by its nature judges are heavily dependent on the lawyers to establish the facts upon which decision will be based, the failure to reply to an adversary's point can have serious consequences.'") (some alterations in original) (quoting *Hardy v. City Optical Inc.*, 39 F.3d 765 (7th Cir. 1994)).

[4] "[O]pinions by other district courts, while informative and entitled to respect and careful consideration, do not bind this Court[]." *Martinez v. State Farm Lloyds*, No. 4:23-CV-00641, 2025 WL 359792, at *4 (S.D. Tex. Jan. 31, 2025); *see* Bryan A. Garner et al., The Law of Judicial Precedent 170 (2016) ("Persuasiveness [of nonbinding precedent] usually derives from sound reasoning, logical structure, authoritative support, evidence that the case received the careful consideration of the court, and citation of pertinent authorities").

After reviewing the pleadings, the *Rocheux* court found that the defendants' request was principally governed by Rule 15(a)(2), not Rule 8(c)(2). *See id.* at 661-62 ("The pleadings thus unequivocally demonstrate that the parties' dispute concerned goods delivered between January and June 2006, as well as warehouse goods billed in September 2006. The plausibility standard . . . persuades this [c]ourt that [d]efendants' generic affirmative defenses did not expand the temporal scope of the legal claims. Therefore, [d]efendants' purported modification seeking offsets on the basis of nonconforming goods delivered between 2000 and 2005 is properly characterized as a motion to amend their [a]nswer to include new counterclaims. . . . Defendants' purported redesignation would drastically change the scope of the claims before the [c]ourt."). Ultimately, the *Rocheux* court permitted defendants to redesignate some, but not all, defenses as counterclaims. *See id.* at 664-65 ("The [c]ourt will permit [d]efendants to redesignate Affirmative Defenses IV, VIII, and IX as counterclaims to seek offsets related to the goods that are the subject of Rocheux's Complaint and Defendants' Answer: goods delivered between January 2006 and June 2006. However, to the extent that [d]efendants' cross-motion attempts to expand these Affirmative Defenses into counterclaims seeking offsets for goods delivered before 2006, the [c]ourt will deny [d]efendants' motion on the grounds of undue delay, prejudice, and futility.") (footnote omitted).[5]

Having considered the parties' respective contentions, and having considered the sole case that the movant relies on, the Court is not convinced by Sandoz's contention that Rule 8(c)(2) can apply in the absence of a mistaken designation. The plain language of Rule 8(c)(2) and nonbinding precedent cut against Sandoz's contention. *See* Fed. R. Civ. P. 8(c)(2) ("***Mistaken Designation.***

---

[5] Whether and, if applicable, why the *Rocheux* court permitted those redesignations under Rule 8(c)(2) is unclear.

If a party mistakenly designates . . . .");[6] *see also Ross v. Indep. Ord. of Foresters*, No. 4:23-CV-64, 2024 WL 2294876, at *3 (E.D. Va. Feb. 12, 2024) ("[T]he [c]ourt sees no reason to treat the counterclaim for declaratory judgment as a 'mistaken' pleading. It appears to the [c]ourt that Foresters made a strategic choice in raising both an affirmative defense for fraud and a counterclaim that incorporates factual allegations with respect to fraud. . . . Thus, the [c]ourt will not treat the counterclaim as an affirmative defense."); *Glob. Healing Ctr., LP v. Powell*, No. 4:10-CV-4790, 2012 WL 1709144, at *6 (S.D. Tex. May 15, 2012) ("[I]t is apparent from the face of Defendants' Counterclaim that the designation of fraud as a [c]ounterclaim, rather than an affirmative defense, was not a mistake. . . . Thus, the Court rejects [d]efendants' contention that the [c]ounterclaim was mistakenly designated."); *Hellauer v. NAFCO Holding Co., LLC*, No. CIV.A. 97-4423, 1998 WL 472453, at *4 (E.D. Pa. July 28, 1998) ("What defendant either fails to recognize or ignores is the fact that Rule 8(c) involves situations '[w]hen a party has *mistakenly* designated a defense as a counterclaim or a counterclaim as a defense.' Such is not the case in the matter at hand. . . . In light of the repeated failure to properly plead its counterclaims, any finding that the designation of the fraud and estoppel counterclaims as defenses was 'mistaken' would require this court to stretch its imagination well beyond the bounds of Federal Rule 8(c).") (alterations in original) (citation omitted). Thus, the Court denies Sandoz's request to redesignate, pursuant to Rule 8(c)(2), its affirmative defenses as counterclaims for declaratory relief.

---

[6] "The Supreme Court and th[e] [Third Circuit] have repeatedly held that the Federal Rules of Civil Procedure, like any other statute, should be given their plain meaning." *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 225 (3d Cir. 2012) (quoting *Berckeley Inv. Grp., Ltd. v. Colkitt*, 259 F.3d 135 (3d Cir. 2001)); *see In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 719 n.9 (3d Cir. 2023) ("We interpret the Federal Rules of Civil Procedure like any posited law."); *see also Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 476 (2019) ("[W]e 'generally presum[e] that statutes do not contain surplusage.'") (some alterations in original) (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006)).

B.     **Sandoz Has Failed to Demonstrate Good Cause for Amending the Scheduling Order**

The parties dispute whether Sandoz is entitled, under Federal Rule of Civil Procedure 16, to "amend its counterclaims to add declaratory judgment causes of action for license, exhaustion, and estoppel." D.I. 519 at 2.[7] Under Rule 16(b)(4), "[w]hen a pleading deadline imposed by a scheduling order has passed, . . . a party seeking to amend must, as a threshold matter, show 'good cause' to modify the deadlines." *Int'l Constr. Prods. LLC v. Caterpillar Inc.*, No. CV 15-108-RGA, 2024 WL 406433, at *1 (D. Del. Feb. 2, 2024) (quoting Fed. R. Civ. P. 16(b)(4)).

Sandoz contends that it "did not unduly delay in moving to amend and good cause exists to allow amendment." D.I. 519 at 2 (capitalization and emphasis altered). This is so, according to Sandoz, because "[a]fter Sandoz's expert Dr. Bell issued a report on license and exhaustion that relied, in part, on Ms. Lindstrom's testimony, Biogen's counsel wrote Quest a letter [(D.I. 519-6 (document dated November 13, 2024))]," which "Biogen produced . . . after the close of fact discovery on November 20, 2024." D.I. 519 at 2; *see* D.I. 530 at 2 ("The Biogen-Quest communications present new information to Sandoz—namely, that there is a need for a declaration of the scope of the conduct that Biogen has licensed so that Biogen will not seek improperly to interrupt doctors' access to JCV testing with respect to patients who are receiving or considered for treatment other than Tysabri."). Biogen disagrees. Biogen responds that "the [Quest] letter is a red herring" and "presented Sandoz with no new information." D.I. 529 at 4.

Biogen contends that "Sandoz cannot show 'good cause' under FRCP 16 given its 16-month delay." D.I. 529 at 3 (emphasis removed). Specifically, Biogen contends that "Sandoz had every opportunity to bring the [proposed] counterclaims before the Sept. 2023 amendment

---

[7] "Where, as here, a request for leave to amend is made after the deadline set by a scheduling order, Rule 16(b)(4) requires a showing of good cause." *Morrison v. Nemours Found.*, No. CV 22-1576-JLH, 2025 WL 219583, at *2 (D. Del. Jan. 16, 2025).

9

deadline, rather than 16 months later." *Id.* Biogen highlights that "Sandoz first raised license/exhaustion/estoppel over three years ago via its affirmative defenses[.]" *Id.*

As noted earlier, in the instant action, the parties dispute when the diligence clock started. Sandoz's attempt to amend its counterclaims turns on its assertion that the diligence clock started once Biogen produced the Quest letter (D.I. 519-6). *See* D.I. 519 at 2.

Often, but not always,[8] courts find that "diligence should be measured from the time the information underlying the proposed amendments became available." *Barry v. Stryker Corp.*, No. CV 20-1787-SRF, 2023 WL 2733652, at *7 (D. Del. Mar. 20, 2023), *report and recommendation adopted*, No. CV 20-1787-RGA, 2023 WL 3224498 (D. Del. May 3, 2023); *see, e.g., Biodelivery Scis. Int'l, Inc. v. Chemo Rsch., S.L.*, No. CV 19-444-CJB, 2020 WL 13802763, at *1 (D. Del. Feb. 20, 2020) ("The Court agrees with Plaintiffs (and with the many courts who have concluded the same) that in general, when a party seeks to amend contentions in light of [] a district court's claim construction order, 'the moving party's diligence, without which there is no good cause, [should be] measured from the day the moving party received the proposed [claim] constructions, not the date of issuance of the [c]ourt's claim construction opinion.' This general rule makes good sense, as: (1) if a movant seeks amendment in light of a court's adoption of a construction that was previously proposed many months earlier; and (2) the movant was nevertheless always found to have acted diligently; then (3) this 'would mean that [the moving] party could wait until after the construction to take action, even though [in many cases] they were fully equipped to act sooner.' Such an outcome would promote and reward delay and inefficiency, not diligence.") (some alterations in original) (citations omitted); *Cytiva Sweden Ab v. Bio-Rad Lab'ys, Inc.*, No. 18-1899-

---

[8] *Cf. VLSI Tech. LLC v. Intel Corp.*, No. 17-CV-05671-BLF, 2024 WL 664804, at *3 (N.D. Cal. Feb. 16, 2024), *mandamus denied sub nom., In re VLSI Tech. LLC*, No. 2024-116, 2024 WL 1152537 (Fed. Cir. Mar. 18, 2024) (nonprecedential).

10

CFC, 2021 WL 431508, at *1 (D. Del. Feb. 8, 2021) ("Courts presume a party lacks diligence if the party had knowledge of the facts supporting its proposed amendment before the deadline to amend."); *Gonzalez de Gomez v. Adams Cnty.*, No. 22-1199, 2023 WL 5163988, at *4 (10th Cir. Aug. 11, 2023) ("Gomez argues she showed good cause because it took the magistrate judge nearly six months to issue the recommendation on Wellpath's motion to dismiss, she moved for leave to amend only two weeks after that recommendation was filed, and no defendant opposed her motion. But . . . Gomez's arguments are lacking. She does not address the district court's reasons for finding she had not been *diligent* in seeking leave to amend. Significantly, the court determined the new allegations and the 25 new defendants she sought to add was information available to her at the time she filed her original complaint.") (nonprecedential) (footnote omitted).

In this instance, considering the subject matter of Sandoz's proposed amendments (*see* D.I. 518-6), and considering Sandoz's representations about the similarity between Sandoz's Operative Answer and its proposed amended answer (D.I. 518-5),[9] the Court finds that Sandoz's diligence clock started well before Biogen produced the Quest letter (D.I. 519-6). Thus, the Court agrees with Biogen that "Sandoz had [sufficient] opportunit[ies] to bring the instant counterclaims before the Sept. 2023 amendment deadline, rather than 16 months later." D.I. 529 at 3.

Accordingly, the Court finds that Sandoz has not met its "burden to show due diligence" under Rule 16(b)(4). *W. R. Grace*, 2023 WL 6200280, at *4.

---

[9] *See* D.I. 519 at 1-3 ("Sandoz is not presenting a new claim or altering the essential character of the case . . . . License and exhaustion have been at issue since the beginning of the case . . . . Both parties have since engaged in extensive fact and expert discovery on these issues . . . . Biogen and Sandoz . . . [in October 2024] deposed Quest's corporate representative, Ms. Nancy Lindstrom, regarding any restriction or limitation Biogen places on Quest's license to provide Stratify testing. . . . Biogen is not prejudiced by an amendment to the counterclaims because they have always been part of this case and the parties conducted extensive discovery on both license and exhaustion . . . . There is no prejudice to Biogen to include these theories as counterclaims for declaratory judgment as opposed to affirmative defenses.").

## IV. CONCLUSION

For the foregoing reasons, the Court denies Sandoz's Motion.[10]

\* \* \*

WHEREFORE, at Wilmington this 10th day of March 2025, **IT IS HEREBY ORDERED** that Sandoz's Motion (D.I. 518) is **DENIED**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[10] Given that the Court ultimately denies Sandoz's Motion, the Court will exercise its discretion and will not make findings on Biogen's alternative contentions. *Cf. Ammar v. McDonough*, No. CV 22-1608-GBW, 2025 WL 692084, at *17 n.23 (D. Del. Mar. 4, 2025).