IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIOGEN INC. and BIOGEN MA INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> SANDOZ INC. and POLPHARMA BIOLOGICS S.A., <br><br> *Defendants.* | REDACTED - PUBLIC VERSION <br> (Filed April 14, 2025) <br><br>  <br><br> C.A. No. 22-1190-GBW |

## ANSWERING BRIEF IN OPPOSITION TO BIOGEN'S MOTION TO VACATE TRIAL DATE

Of Counsel:

Erik J. Olson
Eric C. Pai
Sumaiya Sharmeen
Evelyn L. Chang
Chelsea Caylin Kehrer
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
(650) 813-5600
ejolson@mofo.com
epai@mofo.com
ssharmeen@mofo.com
evelynchang@mofo.com
ckehrer@mofo.com

Matthew Chivvis
Rachel S. Dolphin
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mchivvis@mofo.com
rdolphin@mofo.com
Brian M. Kramer
Wesley WL Chen

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Sandoz Inc. and Polpharma Biologics. S.A.*

MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100
bmkramer@mofo.com
wchen@mofo.com

April 7, 2025

# TABLE OF CONTENTS

                                                                                                               **Page**

I. NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

II. SUMMARY OF THE ARGUMENT .............................................................................. 1

III. FACTUAL BACKGROUND .......................................................................................... 2

IV. ARGUMENT ................................................................................................................... 4

    A. The Present Trial Is Neither Hypothetical Nor Advisory. ..................................... 5

    B. Defendants Disclosed Vidi and the Status of ImmunoWELL Long Before March 17, 2025. ..................................................................................................... 8

    C. Defendants Nonetheless Offered Additional Discovery That Biogen Refused. ............................................................................................................... 12

    D. Defendants Would Be Prejudiced by the Trial's Deferral .................................. 13

V. CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Cases**

*Am. Clinical Lab'y Ass'n v. FDA*,
  No. 4:24-CV-479-SDJ, 2025 WL 964238 (E.D. Tex. Mar. 31, 2025) .................................. 6, 7

*BioDelivery Sci. Int'l, Inc. v. Chemo Rsch., S.L.*,
  C.A. No. 19-444-CFC-CJB, D.I. 509 (D. Del. Feb. 8, 2023) .................................................. 12

*BioDelivery Sciences Int'l, Inc. v. Chemo Research, S.L.*,
  C.A. No. 19-444-CFC-CJB, D.I. 491 (D. Del. Mar. 30, 2022) ............................................... 12

*Dow Chem. Can. Inc. v. HRD Corp.*,
  287 F.R.D. 268 (D. Del. 2012) .............................................................................................. 14

*Ferring Pharms. Inc. v. Jiangsu Hansoh Pharm. Grp., Co.*,
  C.A. No. 22-1474MN, 2024 WL 3339076 (D. Del. July 9, 2024) ........................................... 4

*Forest Laby's, LLC v. Sigmapharm Lab'ys, LLC*,
  C.A. No. 14-1119 (SLR) (SRF), D.I. 278 (D. Del. Oct. 13, 2016) ......................................... 12

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
  695 F.3d 1322 (Fed. Cir. 2012) ............................................................................................... 5

*Sandoz Inc. v. Amgen Inc.*,
  773 F.3d 1274 (Fed. Cir. 2014) ............................................................................................... 5

*Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*,
  C.A. No. 18-819-LPS, 2020 WL 5369109 (D. Del. Sept. 8, 2020) ....................................... 14

**Statutes**

Biologics Price Competition and Innovation Act ("BPCIA") ........................................................ 1

**Other Authorities**

D. Del. LR 7.1.2(a) ........................................................................................................................ 1

D. Del. LR 7.1.3(c)(1) ................................................................................................................... 1

Fed. R. Civ. P. 16(b)(4) ................................................................................................................. 4

Fed. R. Civ. P. 30(b)(6) ......................................................................................................... 2, 4, 9

I.  **NATURE AND STAGE OF PROCEEDINGS**[1]

Pursuant to the Biologics Price Competition and Innovation Act ("BPCIA"), Biogen Inc. and Biogen MA Inc. (collectively "Biogen" or "Plaintiffs") filed this action on September 9, 2022, against Sandoz Inc. ("Sandoz") and Polpharma Biologics S.A. ("Polpharma") (collectively, "Defendants").  (D.I. 2.)

Biogen filed a motion for preliminary injunction on four patents: U.S. Patent Nos. 9,316,641 ("'641 Patent"), 10,119,976 ("'976 Patent"), 11,280,794 ("'794 Patent"), and 9,096,879 ("'879 Patent").  (D.I. 75.)  The Court denied Biogen's request for a preliminary injunction because Biogen did not make a clear showing of irreparable harm; Biogen failed to demonstrate a causal nexus to harm; and Biogen did not demonstrate a likelihood of success on the merits for any of the four patents.  (D.I. 265.)

Following discovery, Biogen is asserting five patents in the upcoming trial: the '641 Patent, '976 Patent, and '794 Patent from the preliminary injunction phase, and U.S. Patent Nos. 10,233,245 ("'245 Patent") and 11,292,845 ("'845 Patent").  (D.I. 517.)

Fact discovery closed on September 20, 2024.  (D.I. 422.)  Expert discovery closed on February 7, 2025.  (D.I. 485.)  The pretrial conference is scheduled for April 29, 2025, and a five-day bench trial is scheduled to begin on May 5, 2025.  (*Id.*)

II.  **SUMMARY OF THE ARGUMENT**

The Court should retain the existing trial date, which both parties advocated for after disclosures regarding Defendants' plans for multiple JCV assays and which is an important step

---

[1] Because Biogen's letter in support of its motion (D.I. 587) does not comply with D. Del. LR 7.1.2. and 7.1.3., Defendants submit this opposition not in the "form adopted by the moving party" (D. Del. LR 7.1.2(a)), but rather as an "Answering Brief" in accordance with D. Del. LR 7.1.3.(c)(1), including all briefing requirements set forth therein.

1

toward the launch of Defendants' FDA approved biosimilar natalizumab (Tyruko) ▇▇▇▇
The trial will not result in a hypothetical, advisory opinion. Rather, the May trial has concrete consequences, enabling a launch of Tyruko, something that Biogen desperately wants to avoid. Defendants did not hide the ball. The VIDITEST ("Vidi") was disclosed in **January 2024**, and Biogen obtained discovery on the test and Sandoz's plans regarding it before discovery closed in the fall of 2024. Vidi was included in Defendants' and *Biogen's* expert reports and in *Biogen's* final infringement contentions. While added discovery is not needed, Defendants offered it, including a Rule 30(b)(6) deposition proposed for April 9 that Biogen rejected. Defendants have also already supplemented the interrogatory response that was directed to use of Vidi.

The Court should deny Biogen's motion. Any other outcome would seriously prejudice Defendants, who already have FDA approval to market Tyruko and now look to vindicate their legal position with respect to Biogen's patents in court ▇▇▇▇.

## III.  FACTUAL BACKGROUND

All Biogen's patents that claim the active pharmaceutical ingredient in Biogen's Tysabri and Defendants' Tyruko have already expired. Biogen has also dropped all the patent claims that it previously asserted cover the manufacture of Tyruko. (D.I. 517.) And Defendants have FDA approval to market Tyruko. (Ex. [2] 1 (8/25/2023 Press Release (SDZNAT-00207320)).) Nothing in this case or any pending FDA application concerns Defendants' manufacture, import or sale of Tyruko. Biogen's asserted patents are limited to claiming specific reagents used in a competitive assay that applies solely in the confirmation step of the Stratify assay and certain, limited

---

[2] Unless otherwise noted, exhibit references are to the Declaration of Sarah Brickey in Support of Defendants' Opposition to Biogen's Motion to Vacate ("Brickey Decl.") filed herewith.

treatment algorithms that are not present in either Tysabri's or Tyruko's FDA-approved product label.

[REDACTED]

[REDACTED] (*See, e.g.*, Ex. 2 at 19 (Sandoz Third Suppl. Resp. to Interrogatory No. 1).) The nature and scope of those disclosures are discussed in much greater detail below, but at base they demonstrate that there is no merit to Biogen's claim that Defendants disclosed for the first time [REDACTED]. To the contrary, Biogen received substantial document discovery on Vidi in summer 2024 (Ex. 3 at 2 (3/19/2025 Chivvis Ltr to Spieth); Ex. 4 (7/29/2024 Chang email to Biogen), disclosed final infringement contentions regarding Vidi in July 2024 (Ex. 5 at 2 (Plaintiff Selection of Patent Claims and Final Infringement Contentions); *see also, e.g.,* Ex. 6 at 1, 4, 24, 35-36, 45-46, 50, 60 (Infringement Contentions)), took a deposition directed to Vidi in August 2024 (*See* Ex. 7 at 18:20-19:15 (8/27/2024 Godwin Dep. Tr.)), and included Vidi in the report of Biogen's expert, Dr. Vollmer, in October 2024 (*see e.g.,* Ex. 8 ¶¶ 223-226, 297-298, 301-302, 312, 326, 334-336, 347, 356, 360, 364, 379, 406, 408, 412, 414-415, 427-428, 442-444, 450, 455-457, 461-462, 466-467, 474-487, 490, 492, 536, 655, 657, 666, 674, 678, 686, 688 (10/25/2024 Vollmer Opening Report)).

[REDACTED]

[REDACTED]. (Ex. 9 (SDZNAT-00257442 at -446-447); Ex. 7 at 147:1-151:5; Declaration of Jeffrey Robinson in Support of Opposition to Motion to Vacate ("Robinson Decl."), ¶ 5.) [REDACTED]



3

██████████████████████████████████████████████████████████████

██████████████████████████████████████ As discussed in more detail below, the technical aspects relevant to Biogen's patents have not changed for either test. (*Id*., ¶¶ 4, 6.)

On a March 17, 2025, meet and confer, Biogen requested additional information regarding Defendants' plans for an anti-JCV antibody assay ████████████████████

████████████████████████████████████. (Brickey Decl., ¶ 2.) Defendants confirmed what was said in the prior paragraph. (*Id*., ¶ 3.) Although Defendants do not believe additional discovery is necessary, Defendants thereafter offered to produce a 30(b)(6) witness for a deposition on the topic of Sandoz's current plans for Vidi and ImmunoWELL. (Brickey Decl., ¶ 5; Ex. 3.) Defendants repeated the offer on March 28, the date Biogen filed its motion. (Ex. 10 (4/1/2025 Brickey email to Biogen); Brickey Decl., ¶ 5.) Both before that date, on that date, and after that date, Biogen has refused to take the deposition. (*Id.*) As an interim step, Defendants have served supplemental interrogatory responses. (Ex. 11 (Sandoz Sixth Suppl. Response to Interrogatory No. 1); Ex. 12 (Defendants' Second Suppl. Response to Interrogatory Nos. 19-20; Ex. 26 (Sandoz Suppl. Responses to First Set of Requests for Admission).) Defendants are still meeting and conferring with Biogen about what additional discovery, if any, should occur.

IV.   **ARGUMENT**

Biogen must show good cause under Rule 16(b)(4) to amend the scheduling order and continue trial. *See e.g., Ferring Pharms. Inc. v. Jiangsu Hansoh Pharm. Grp., Co.,* C.A. No. 22-1474-MN, 2024 WL 3339076, at *1 (D. Del. July 9, 2024) (applying Rule 16(b)(4) good cause standard to a motion to continue trial). "Good cause exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* Biogen neither cites nor argues from any cases showing good cause to amend the scheduling order under

4

anything resembling the present circumstances. *See Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1325 (Fed. Cir. 2012) (affirming motion to dismiss declaratory judgment claims); *Sandoz Inc. v. Amgen Inc.,* 773 F.3d 1274, 1275 (Fed. Cir. 2014) (affirming motion to dismiss). For the reasons discussed below, good cause does not exist.

### A. The Present Trial Is Neither Hypothetical Nor Advisory.

The May 5 trial will have concrete, near-term consequences for both parties. It is not hypothetical or advisory. Instead, it paves the way for the market entry of Tyruko, a biosimilar approved by FDA on August 25, 2023 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Defendants do not need to await FDA approval for the product. FDA approved the application to market and sell Tyruko more than a year ago.

Nor do Biogen's patents limit the manufacture or sale of Tyruko. All patents that claimed natalizumab (the active pharmaceutical ingredient in the product) expired years ago. No currently asserted patent claim covers the manufacture or sale of the product.

Biogen's remaining asserted patents address three narrow topics adjacent to testing for anti-JCV antibodies. The '641 Patent claims the use of specific reagents (HPVLPs in solution) as part of a limited confirmatory assay used by Quest with approximately 20% of samples when Quest performs the Stratify JCV DxSelect assay ("Stratify"). (Ex. 13 ¶ 73 (10/25/2024 Viscidi Report).) The two "Early Method of Treatment" patents claim a specific treatment algorithm in which healthcare providers treat patients with natalizumab if and only if the patient *does not* test positive for anti-JCV antibodies. Biogen's own sworn statements confirm that it did not possess

---

[3] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The Court has rightly emphasized that it needs time to write a decision following the submission of findings of fact and conclusions of law. (D.I. 486.) Delay squeezes the Court (even more than the parties) and likely has the practical effect of preventing a written decision before the fall.

5

any such invention years after the patent application that gave rise to these claims was filed. (*See, e.g.*, Ex. 14 at 38:10-22 ▮▮▮

▮▮▮

(9/19/2024 Subramanyam Dep. Tr.); Ex. 15 at 33:11-25, 50:17-51:3 ▮▮▮

▮▮▮

(9/17/2024 Sandrock Dep. Tr.).)  The two "0.90 Index Level" patents claim a different (and fundamentally conflicting) treatment algorithm in which healthcare providers would treat patients with natalizumab if and only if patients test positive but are reported to have an index value of less than 0.90 based on the output of the Stratify assay.  FDA explicitly rejected Biogen's efforts to add this information to the product's FDA label.  (Ex. 16 ¶¶ 30, 37, 49-57 (12/10/2024 Pleasure Rebuttal Report).)  FDA has also made clear that it does not require JCV antibody testing to prescribe natalizumab.  (*See, e.g., id.* ¶¶ 32, 35, 154, 195.)

Defendants do not infringe any of these patents.  More specifically, the Vidi assay does not include a confirmatory assay; ImmunoWELL uses different reagents (antibodies—a chicken IgY antibody—not antigens such as HPVLPs) in its confirmatory assay; and Tyruko's label and REMS program do not instruct physicians to treat patients according to either of the two conflicting treatment algorithms.  Moreover, Defendants will prove that the key claims are invalid.

The Court's conclusion on the disputed issues will affect how and when Tyruko is marketed and which anti-JCV antibody test doctors will use when they prescribe natalizumab. ▮▮▮

▮▮▮

▮▮▮  As another district court recently made clear, ▮▮▮

6

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. See Am. Clinical Lab'y Ass'n v. FDA, No. 4:24-CV-479-SDJ, 2025 WL 964238, at *21 (E.D. Tex. Mar. 31, 2025) ("Congress has already considered the distinct issues raised by laboratory-developed test services in CLIA, and chose to address those issues by vesting regulatory authority in CMS, not in FDA."). ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■n.

Third, Defendants have challenged the validity of Biogen's patents and have asserted defenses that Biogen licensed Quest to provide Stratify testing to physicians no matter what drug the doctor prescribes, that Diasorin's licensed sale of Stratify kits to Quest exhausts Biogen's patents, and that Biogen is equitably estopped from asserting its patents with respect to doctors' orders for Stratify testing. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■ Defendants have waited patiently for their opportunity to prove their case to the Court in May ■■■■■■■■■■■■■■■■■■■■■■■■. The Court's ruling following trial will have near-term, tangible consequences.

7

**B. Defendants Disclosed Vidi and the Status of ImmunoWELL Long Before March 17, 2025.**

Biogen's motion turns on its false claim that, on March 17, 2025, it "learned new facts that call into question the nature, operation, and even identity of the diagnostic test accused of infringement." (D.I. 587 at 1.) Biogen bases its request to vacate the long-standing trial date on the idea that Defendants hid Vidi, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. That claim is simply false. Defendants disclosed Vidi as a separate JCV testing option well before discovery closed. Biogen knew of Vidi ▇▇▇▇▇▇ months before it reconfirmed the trial date with the Court on October 3, 2024. And Biogen has been aware of Defendants' defenses on invalidity, licensing, patent exhaustion and equitable estoppel since 2022. Circumstances have not changed with respect to the key issues in dispute at the trial.

*Defendants disclosed Vidi ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ well before discovery ended.* As Defendants emphasized in a letter to Biogen on March 19, 2025, Vidi is not a new topic in this case. (Ex. 3.) On **January 29, 2024**, Sandoz disclosed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that "[o]ne such test is a test provided by Vidia Ltd. called ELISA-VIDITEST anti-JCV IgG kit." (Ex. 2.) On July 29, 2024, Defendants agreed to run searches crafted by Biogen, including terms directed exclusively to Vidi. (Ex. 4; *see also* D.I. 435 at 2.) Before the close of discovery, Defendants produced hundreds of documents to Biogen regarding Vidi (Ex. 3). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

00255376)); Ex. 18 (Instructions for Use (SDZNAT-0222861)); (Ex. 19 (Sensitivity and Specificity Determination (SDZNAT-00191187)); (Ex. 20 (Final Study on Diagnostic Performance (SDZNAT-00191191)).)

On August 27, 2024, Sandoz provided Ms. Godwin as a 30(b)(6) witness to provide information about its current plans regarding VIDITEST. (*See e.g.,* Ex. 7 at 18:20-19:15.) At her deposition, Ms. Godwin confirmed that Vidi was a basic ELISA without a confirmatory step (which is the only step accused of infringement for the '641 Patent). (*See e.g., id.*, at 98:7-10 ("Q. And you understand that the VIDI kit does not include a confirmatory test? A. Yes.").) Ms. ████████████████████████████████████████████████ Biogen's attacks on her testimony in footnote 2 are misguided ████████████████████████████████████████████████ ll. Nonetheless, if Biogen believed that Defendants' document production and deposition testimony relating to Vidi were inadequate, it could have sought relief from the Special Master in the fall of 2024, but it did not do so.

Rather, Biogen alleged infringement by Vidi in its final infringement contentions (*see* Ex. 5 at 2; *see also, e.g.,* Ex. 6 at 1, 4, 24, 35-36, 45-46, 50, 60), and Biogen included Vidi in an expert report prepared by *Biogen's* expert, Dr. Vollmer. (*See e.g.,* Ex. 8 ¶¶ 223-226, 334-336, 360, 455-456, 474, 492, 536, 678, 688.) Defendants reflected Vidi in their experts' reports. (*See*

9

Ex. 16 ¶¶ 24-25, 29, 240-243, 248, 261, 278, 282, 287, 290-291, 299, 305-307, 330; Ex. 21 ¶¶ 140-143, 147 (12/10/2024 Galloway Report).) A mountain of evidence demonstrates that there is no merit to Biogen's claim that Defendants first disclosed ▓▓▓▓▓ Vidi in March 2025.

*Biogen knew ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ before October when Biogen re-confirmed the May 5 trial date.* Defendants also have not concealed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Biogen also emphasized the importance of keeping the May 2025 trial date to the Special Master, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (*See e.g.,* Ex. 24 (7/25/2024 Special Master H'rg Tr. at 27:12-18, 38:11-12 (Biogen emphasized that, even though ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10

██████████ Biogen needs to "keep the trial date, given how long the lead-up has been.").) At the parties' request, the Court retained the May trial date in its October hearing. (*See* D.I. 485.) As a result, Defendants have expended time, effort, and planning to get to trial ██████████ ██████████ Biogen's belated change of heart prejudices Defendants and risks depriving the public of a new, cheaper treatment option for MS.

*In any event, the factual information relevant to the specific patents asserted by Biogen has not changed.* Biogen has not shown how ██████████████████████████ ██████████████████████████████ changes the factual disputes that are relevant to the disputed issues raised by the patents asserted by Biogen. The '641 Patent claims a competitive ELISA with HPVLPs used as a confirmatory step in the Stratify assay. (Ex. 21 ¶¶ 28-30.) Both in 2024 and now, Vidi does not use a competitive ELISA or a confirmatory step. (Ex. 21 ¶ 142; Robinson Decl., ¶ 6.) Both in 2024 and now, ImmunoWELL uses chicken IgY (an antibody) not HPVLPs (an antigen) in the confirmatory step. (Ex. 21 ¶¶ 42-43; Robinson Decl., ¶ 4.) The Early Method of Treatment Patents refer to a finding that a sample is positive or negative for anti-JCV antibodies. (Ex. 16 ¶ 243.) Both in 2024 and now, Vidi and ImmunoWELL both produce a positive or negative outcome. (Robinson Decl., ¶ 6.) The 0.90 Index Level Patents refer to a specific 0.90 index value derived from an optical density reading. (Ex. 16 ¶ 159.) Both in 2024 and now, Vidi and ImmunoWELL produce an optical density reading. ImmunoWELL reports that reading. (Ex. 25 (ImmunoWELL Draft Information for Use (POLPHARMA-0041503 at -504)).) Vidi would be capable of reporting that reading. (Robinson Decl., ¶ 6.) More importantly, in 2024 and now, the label and the REMS program for Tyruko approved by FDA does not mention the 0.90 index level because FDA rejected Biogen's efforts to include it. (Ex. 16 ¶¶ 30, 37, 49-57.) Bottom line, the foundational facts relevant to

11

the patents have not changed. The disputed factual and legal issues are fully joined and can be presented starting May 5.

Biogen has also overstated the authority in this district regarding "postpon[ing] trials where FDA developments are ongoing and product details are in flux." (D.I. 587 at 3.) All of its cited cases are distinguishable. For example, the court's postponement in *BioDelivery Sciences Int'l, Inc. v. Chemo Research, S.L.,* C.A. No. 19-444-CFC-CJB, 3/30/2022, Oral Order (D. Del. Mar. 30, 2022) was also due to the fact that "the Court also has another trial scheduled to begin on the same date. . . and it relates to a case that was filed before this one." (Biogen Ex. 7; *see also id.* Ex. 8, *Forest Laby's, LLC v. Sigmapharm Lab'ys, LLC,* C.A. No. 14-1119 (SLR) (SRF), D.I. 278, Order (D. Del. Oct. 13, 2016) (staying trial until it appears likely that defendant will receive approval of ANDA); *see also id.* Ex. 12, *BioDelivery Sci. Int'l, Inc. v. Chemo Rsch., S.L.,* C.A. No. 19-444-CFC-CJB, D.I. 509, Order (D. Del. Feb. 8, 2023) (declining to schedule a trial around predicted date of FDA approval.).) Unlike these cases, Defendants have FDA approval of Tyruko, and the parties agreed on the trial date. Defendants legally could launch Tyruko at any time, but they have waited in light of the May 5 trial date ordered by the Court.

### C. Defendants Nonetheless Offered Additional Discovery That Biogen Refused.

For the reasons stated above, there is no actual need for new discovery. The facts regarding technical details and the procedures to be used with ImmunoWELL and Vidi have been disclosed and remain unchanged. Defendants' defenses are fully disclosed and have been the subject of extensive discovery. Trial can occur fairly in the absence of any new discovery.

Nonetheless, Defendants repeatedly offered a deposition of a corporate designee, Jeffrey Robinson, a previously disclosed witness who is coming to trial for April 9, 2025. Biogen rejected each offer, including a renewed offer made on the day that Biogen filed its motion.

Even then, Defendants have continued to try to resolve the disputes. Defendants updated their interrogatory answers. ████████████████████████████████████████ ████████████████████████████████████████ And Biogen now has the added declaration of Mr. Robinson submitted with this opposition. Any further discovery should be resolved by honest efforts to meet and confer (not categorical rejections of a new deposition as irrelevant or insufficient). If more is needed, it can still happen before trial.

### D. Defendants Would Be Prejudiced by the Trial's Deferral

Finally, Biogen's motion should be denied because it would prejudice Defendants. Defendants have honored the Court's process, have been preparing their case for trial based on Biogen's reaffirmation of the May trial date and the Court's willingness to consider the possibility of rendering a decision by the end of August 2025. (D.I. 485.) For the reasons stated above, Defendants believe that the Court's decision following a May trial will enable Defendants' launch of Tyruko ████████████. Biogen knows this and exploits any opportunity for delay. It transparently hopes that an order deferring the trial might accomplish Biogen's commercial goals without requiring Biogen to prove its legal claims or defend the validity of its patents. That would be unjust. There should be no delay. Defendants are ready for trial. The Court has already expended time and resources to rule on *Daubert* motions. The Court should have the benefit of every week between May 5 and the end of August to prepare its judgment. The Court should not change its scheduling order when the non-moving party is prejudiced by the delay. *See Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, C.A. No.

---

[4] Biogen falsely suggests that it must pursue discovery in the Czech Republic to get information on Vidi. Defendants produced the information last summer. ████████████████████████████ ████████████████████████████████████████████████████████████████

13

18-819-LPS, 2020 WL 5369109, at *11 (D. Del. Sept. 8, 2020) (When evaluating good cause, courts may "consider any prejudice to the party opposing the modification" and "[p]rejudice may include the delay of a trial date."); *see also Dow Chem. Can. Inc. v. HRD Corp.,* 287 F.R.D. 268, 270 (D. Del. 2012) (same).

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Biogen's request to continue the trial date and its request for added discovery.

Dated: April 7, 2025

| | |
|---|---|
| Of Counsel: | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Erik J. Olson<br>Eric C. Pai<br>Sumaiya Sharmeen<br>Evelyn L. Chang<br>Chelsea Caylin Kehrer<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road<br>Palo Alto, CA 94304<br>(650) 813-5600<br>ejolson@mofo.com<br>epai@mofo.com<br>ssharmeen@mofo.com<br>evelynchang@mofo.com<br>ckehrer@mofo.com | /s/ Anne Shea Gaza<br>Anne Shea Gaza (No. 4093)<br>Samantha G. Wilson (No. 5816)<br>Daniel G. Mackrides (No. 7230)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>agaza@ycst.com<br>swilson@ycst.com<br>dmackrides@ycst.com<br><br>*Attorneys for Defendants Sandoz Inc. and Polpharma Biologics S.A.* |
| Matthew Chivvis<br>Rachel S. Dolphin<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>(415) 268-7000<br>mchivvis@mofo.com<br>rdolphin@mofo.com | |
| Brian M. Kramer<br>Wesley WL Chen<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive, Suite 100<br>San Diego, CA 92130<br>(858) 720-5100<br>bmkramer@mofo.com<br>wchen@mofo.com | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 7, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Jack Blumenfeld | Eric J. Marandett |
| Karen Jacobs | Anita M.C. Spieth |
| Derek J. Fahnestock | Sophie F. Wang |
| Morris, Nichols, Arsht & Tunnell LLP | Marina Pullerits |
| 1201 North Market Street | John C. Calhoun |
| P.O. Box 1347 | Emily H. Miller |
| Wilmington, DE 19899 | Yani H. Ngo |
| jblumenfeld@morrisnichols.com | Benjamin DuBois |
| kjacobs@morrisnichols.com | Choate, Hall & Stewart LLP |
| dfahnestock@morrisnichols.com | Two International Place |
| | Boston, MA 02110 |
| | emarandett@choate.com |
| | aspieth@choate.com |
| | swang@choate.com |
| | mpullerits@choate.com |
| | jcalhoun@choate.com |
| | emiller@choate.com |
| | yngo@choate.com |
| | bdubois@choate.com |
| | biogentysabri@choate.com |

*Attorneys for Biogen Inc. and Biogen MA Inc.*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com
dmackrides@ycst.com

*Attorneys for Defendants Sandoz Inc. and Polpharma Biologics S.A.*